NOT DESIGNATED FOR PUBLICATION

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

Nos. 122,806
122,807
123,035
123,036

In the Interests of B.H. and E.H.,
Minor Children.

MEMORANDUM OPINION

Appeal from Lyon District Court; JEFFRY J. LARSON, judge. Opinion filed February 5, 2021.
Affirmed.

*Jeremy Dorsey*, of Kansas Legal Services, of Emporia, for appellant natural father.

*Brian L. Williams*, of Williams Law Office, LLC, of Emporia, for appellant natural mother.

*Meghan K. Morgan*, assistant county attorney, and *Marc Goodman*, county attorney, for appellee.

Before GARDNER, P.J., SCHROEDER, J., and WALKER, S.J.

PER CURIAM:  The natural mother (Mother) and natural father (Father) of B.H. and
E.H. appeal from the district court's finding of unfitness and termination of parental
rights. Upon a complete review of the record, we find substantial competent evidence
supports the district court's termination of Mother's and Father's parental rights and that it
was in the best interests of B.H. and E.H. We affirm.

FACTS

B.H. was born to Mother and Father in July 2014. B.H. was placed in the custody of the Kansas Department for Children and Families (DCF) in October 2015 and was adjudicated a child in need of care (CINC) in December 2015. E.H. was placed in DCF custody almost immediately after his birth in May 2018 and was adjudicated a CINC in June 2018. Throughout the management of the case, DCF utilized the services of St. Francis Ministries (SFM) to provide caseworkers and support staff to work with Mother and Father.

At a permanency hearing for B.H. in April 2018, it was determined reintegration of B.H. into the parents' home was no longer a viable option, and the State was ordered to file a motion to terminate parental rights. At a permanency hearing for E.H. in July 2018, the State indicated it would also be filing a motion to terminate parental rights to E.H. The State moved to terminate the parents' parental rights to B.H. and E.H. in April 2018 and August 2018, respectively.

Following a trial in August 2018, the district court denied the State's motions. In doing so, the district court indicated it would likely be in the children's best interests if parental rights were terminated; however, it could not do so because the State had not met its burden to show the Mother or Father were unfit. The district court stated it would continue to monitor Mother's and Father's progress toward reintegration with the assistance of SFM. At a permanency hearing in June 2019, the district court found reintegration was no longer viable and ordered the State to file a second motion for termination of parental rights.

In July 2019, the State filed a second motion to terminate parental rights, alleging Mother was unfit based on issues with violence, addiction, and mental health. The State further alleged there were issues between Mother and Father in their marriage and

concerns with Mother's behavior toward various caseworkers and professionals who had been working with the family toward reintegration.

The State alleged Father had mental health issues and was also a registered sex offender in Kansas. The State further alleged Father had a history of anger issues and was inconsistent in attending treatment for his anger and mental health issues. The State also alleged Mother and Father had, at various times, not permitted caseworkers to enter their home and Father had interacted inappropriately with caseworkers and other professionals who had been working with the family. Additionally, the State alleged Father was unable to maintain consistent employment.

The State asserted both Mother and Father were unfit based on the following statutory criteria:

- K.S.A. 2020 Supp. 38-2269(b)(2)—"conduct toward a child of a physically, emotionally or sexually cruel or abusive nature";

- K.S.A. 2020 Supp. 38-2269(b)(4)—"physical, mental or emotional abuse or neglect or sexual abuse of a child";

- K.S.A. 2020 Supp. 38-2269(b)(7)—"failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family";

- K.S.A. 2020 Supp. 38-2269(b)(8)—"lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child";

- K.S.A. 2020 Supp. 38-2269(c)(1)—"[f]ailure to assure care of the child in the parental home when able to do so";

- K.S.A. 2020 Supp. 38-2269(c)(2)—"failure to maintain regular visitation, contact or communication with the child or with the custodian of the child"; and

- K.S.A. 2020 Supp. 38-2269(c)(3)—"failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home."

The State also alleged Father was unfit based on the statutory criteria of:

- K.S.A. 2020 Supp. 38-2269(b)(5)—"conviction of a felony and imprisonment"; and

- K.S.A. 2020 Supp. 38-2269(c)(4)—"failure to pay a reasonable portion of the cost of substitute physical care and maintenance based on ability to pay."

The State, at the time of the trial on the second motion for termination of parental rights, withdrew its request to proceed under the statutory presumption of unfitness provided by K.S.A. 2020 Supp. 38-2271(a)(3) and chose to proceed under two other statutory presumptions: K.S.A. 2020 Supp. 38-2271(a)(5)—a child (E.H.) has been in out-of-home placement for one year or longer and the parent has substantially neglected or willfully refused to carry out a reasonable plan, approved by the court, directed toward reintegration of the child into the parental home; and K.S.A. 2020 Supp. 38-2271(a)(6)— a child (B.H.) has been in an out-of-home placement, under court order for a cumulative total period of two years or longer; the parent has failed to carry out a reasonable plan, approved by the court, directed toward reintegration of the child into the parental home; and there is a substantial probability the parent will not carry out such plan in the near future.

The district court held a termination trial in November 2019. Both Mother and Father stipulated the district court could admit the transcript of the first termination trial as part of the record in the second trial.

In the first trial, the State called the following witnesses:  Jacqueline Psota, Jessica Hemme, Nicole Dawson, Shane Mullen, Serena Randolph, Laura Price, Ashley Davis, Marissa Murray, Teighlor Henning, Melissa Patterson, and Rene Appelhans. The general theme of their testimony reflected Mother and Father were difficult to work with, made very little progress for improvement, had outbursts of anger with the individual witnesses assigned to work with the family, and, finally, an overriding resistance to making lasting improvements toward reintegration of B.H. and E.H. back into their home.

In the second trial, the State called the following witnesses:  Angie Indra, Cara Bass, Shane Mullen, Bradford Douglas, Tara Schnakenberg, Melissa Patterson, Rene Appelhans, the foster parents, Michelle Zumbrum, Elizabeth Dunn, Lindsay Metcalf, and Jennifer Billet. The fosters parents each testified about E.H.'s demeanor and the fact he became withdrawn after visits with Mother and Father. The other witnesses generally testified about working with Mother and Father, the parents' continued lack of improvement and resistance to the help being offered, their unwillingness to work towards completing the reintegration plan, Mother and Father feeding E.H. food against the doctors' orders given his special needs, their continued anger outbursts with the various workers trying to help the family, and their anger with each other in front of both B.H. and E.H.

The workers from SFM consistently testified about how they tried to work with Mother and Father to bring improvement and their respective concerns with the parents' lack of progress; Mother's and Father's unwillingness to do simple tasks such as allowing the caseworkers to observe the condition of the home or providing the workers with proof of paying their rent, utility bills, or a family budget; and Father's anger outbursts where

he called the some of the caseworkers "cunts" and slammed the door on them. During one visit, Father became very upset with Dawson and told her he had just gotten charged with battery and "wasn't afraid to get a new one against [Dawson]."

In response to the testimony provided by the various witnesses for the State, Mother testified she felt SFM was lacking in their interactions with the parents and the SFM staff had been defiant with the parents. Mother disputed the number of outbursts about which the various caseworkers had testified. Mother asserted B.H. was not challenging to parent but simply had difficulties and confusion from being moved from place to place for their visits. Mother was not concerned with B.H. running out of the room during visits and thought it was a normal behavior. Mother also seemed to believe Father had not spoken inappropriately to SFM staff because he would catch himself before using profanities or would simply mumble his comments. Father did not testify or present any evidence on his behalf.

The district court issued a memorandum decision and order. The district court found E.H. had been in an out-of-home placement for 18 months and B.H. had been in an out-of-home placement for more than 4 years. The district court considered the parents' case plan tasks and their failure to complete most of those tasks. The district court found the State established by clear and convincing evidence the parents had "substantially neglected or willfully refused to carry out a reasonable plan, approved by the Court, directed toward the reintegration of E.H. into the parental home." The district court further found the State established by clear and convincing evidence "that (a) the parents have failed to carry out a reasonable plan approved by the Court, directed toward reintegration of B.H. into the parental home, and (b) there is a substantial probability that the parents will not carry out such plan in the near future." The district court also held the presumptions of unfitness under K.S.A. 2020 Supp. 38-2271(a)(5) applied to E.H. and K.S.A. 2020 Supp. 38-2271(a)(6) applied to B.H. It then held these were rebuttable

6

presumptions under K.S.A. 60-414(a) and the evidence presented by the parents was insufficient to rebut the presumptions of unfitness.

The district court noted the various allegations of abuse and neglect as reflected in the testimony. It found the "consistent nature of these three allegations made by a young child over a period of time causes the Court to question the credibility of the parents' explanations and denials." The district court further noted that, during the pendency of the case, Father was convicted of failing to register under the Kansas Offender Registration Act, K.S.A. 2020 Supp. 22-4901 et seq. It found the conviction fell within the statutory criteria of K.S.A. 2020 Supp. 38-2269(b)(5). The district court then noted all the services that had been provided to the family. It found "[d]espite all of these services, the evidence presented shows the parents have made little progress in adjusting their conduct, circumstances, or conditions to meet the needs of the children except in limited ways." The district court found any progress Mother and Father made in addressing their individual needs had not resulted in an increased ability to care for the children. It noted there was testimony from "nearly every SFM employee outlining concerns about the parents' ability to actually parent these children for an extended period of time."

The district court found Mother and Father were unable to properly supervise B.H. during visits and were inattentive when the child left the room. The district court further found the evidence showed Mother and Father were unable to understand the special needs of E.H. and the special care he required. The district court stated Mother and Father "clearly and consistently demonstrated a high level of animosity, aggression, and agitation toward anyone and practically everyone working to reintegrate this family." And the district court went on to find Mother and Father were unable to appreciate how their interaction with the caseworkers affected their ability to care for the children.

The district court found the evidence supported termination under the statutory criteria of K.S.A. 2020 Supp. 38-2269(b)(9) because E.H. had been out of the home for

16 of the past 22 months, B.H. had been out of the home for 22 of the past 22 months, and Mother and Father had not made progress toward a reasonable court-approved reintegration plan. It found Mother and Father had consistently failed to adequately meet the children's needs throughout the children's lives. The district court found Mother and Father had from October 2015 to November 2019 to make changes to keep B.H. in their home and had not done so, and they had made no progress through E.H.'s entire life to that point.

The district court held the State had proven Mother and Father were both unfit by reason of conduct or condition rendering them unable to care for the children and their conduct or condition was unlikely to change for the foreseeable future. The district court found termination of Mother's and Father's parental rights was in the children's best interests. In particular, the district court noted E.H. had unique physical needs, which Mother and Father did not seem to appreciate. Similarly, the district court noted B.H.'s unique mental and emotional needs. It found there was no evidence E.H. had bonded with either Mother or Father and little evidence of any bond between B.H. and Mother and Father.

Mother and Father timely filed separate notices of appeal. However, given the facts and issues are nearly identical and should be resolved together, we have consolidated the cases. Additional facts are set forth as necessary herein.

I.     THE RECORD REFLECTS MOTHER AND FATHER WERE UNFIT.

Mother and Father argue the district court erred in finding they were unfit.

8

A.      *Standard of Review*

A parent has a constitutionally recognized right to a parental relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Accordingly, the court may terminate parental rights for a child only upon clear and convincing proof of parental unfitness. K.S.A. 2020 Supp. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, 1113, 336 P.3d 903 (2014).

As provided in K.S.A. 2020 Supp. 38-2269(a), the district court must find by clear and convincing evidence the parent is unfit "by reason of conduct or condition," making him or her "unable to care properly for a child" and the circumstances are "unlikely to change in the foreseeable future." In reviewing a district court's termination of parental rights, we view all the evidence in the light most favorable to the State to determine whether "a rational factfinder could have found it highly probable, *i.e.* by clear and convincing evidence," parental rights should be terminated. *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011). In making this determination, we do not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. at 705.

B.      *Discussion*

1.      *Mother is unfit.*

Mother argues the evidence was insufficient to show she was unfit. She generally asserts SFM staff undermined both Mother's and Father's ability to carry out the reintegration plan. She acknowledges there was considerable distrust between both Mother and Father and the caseworkers. But she asserts the district court erred by relying so heavily on the distrust of Mother and Father towards the caseworkers. Mother

9

essentially asks us to overlook the voluminous testimony regarding the anger, outbursts, animosity, and aggression both Mother and Father showed toward the caseworkers. Mother's argument is unpersuasive as she largely asks us to reweigh conflicting evidence and/or determine credibility, which we cannot do. See *In re B.D.-Y.*, 286 Kan. at 705. To the extent there was a rift or disconnect between both Mother and Father and the caseworkers, it was because both parents' behavior frustrated the extensive reasonable efforts of the caseworkers to assist and advise both Mother and Father during visits and to perform other tasks such as walk-throughs of their home. The district court's finding on this point is supported by the record.

Mother further argues both parents were able to maintain appropriate income and provide proof of income and payment of utilities to SFM. In fairness, Mother was generally consistent in her employment, whereas Father was not. However, the issue Mother fails to acknowledge is the testimony from Metcalf reflecting both Mother and Father failed to develop and review a budget with her, had not consistently provided proof of income and payment of rent and utilities, and often became hostile when she asked them about their jobs. Again, the record contradicts Mother's claims.

Mother argues the biggest obstacle to reintegration was the fact visits were reduced to one hour per week following a report of abuse to DCF. This also resulted in the family no longer attending the Secure Beginnings program with Indra. Mother asserts SFM should not have reduced the visits because the allegation was later determined by DCF to be unsubstantiated. The first problem with Mother's argument is the district court believed the allegations both Mother and Father were physically abusive toward B.H. The district court also explicitly questioned both parents' credibility in regard to their explanations and denials of the abuse allegations to the caseworkers. In short, DCF may have found the allegation unsubstantiated, but the district court did not. Here, the district court, not DCF, is the determinate fact-finder. The district court's factual and credibility findings on this point render Mother's argument unpersuasive.

10

Mother builds on her argument by asserting therapy with Indra had been productive and should have continued absent the abuse allegations. Indra's testimony indicated the family was progressing with therapy. However, based on the concerns of abuse—allegations the district court accepted as true—it was not inappropriate for visits to be reduced and therapy to be discontinued.

Mother further relies on testimony from Indra and Mullen as evidence that Mother and Father had made progress through therapy. She argues there was no need for additional mental health treatment in light of both Mother's and Father's progress. Mother asserts: "The record is clear that the continued mental health referrals, per the testimony of the social workers, centered not around the mental health of these parents but their conflict, distrust, and animosity towards the SFM staff they blamed for separating them from their children." This argument again goes largely to the weight of the evidence. But even more problematic is the underlying premise of Mother's argument. By her reasoning, "conflict, distrust, and animosity towards the SFM staff" is somehow inherently distinct from both Mother's and Father's mental health issues. Mother is incorrect. The various SFM staff members testified to multiple instances in which a common-sense observation of both Mother's and Father's behavior would cause any reasonable person to be concerned about their mental health.

Mother finally argues the district court erred because it accepted Metcalf's and Billet's testimony regarding ongoing concerns about Mother's and Father's mental health over the testimony regarding their progress. She asserts the district court should have accepted the testimony of trained therapists over the social workers. Once again, this is an argument about the weight and credibility of the evidence. The argument is, therefore, unpersuasive. However, the other problem with Mother's argument is the fact the district court noted whatever individual progress Mother and Father made in addressing their individual needs had not helped them progress in addressing the children's needs. Even accepting Indra's and Mullen's testimony, it does not mean both Mother and Father were

11

making progress toward reintegration with the children. Quite to the contrary, Metcalf's and Billet's testimony reflected there were ongoing, legitimate common-sense concerns during Mother's and Father's visits with the children. And this is the paramount concern the district court was tasked with addressing. Regardless of the progress either Mother or Father made in a clinical setting, it is meaningless if it did not improve their actual interaction with the children. Mother's argument is not persuasive, and we observe no error in the determination by the district court that Mother was unfit.

### 2. *Father is unfit.*

Father did not testify and thus denied the district court the opportunity to consider and weigh his testimony. Father's arguments are largely the same as Mother's and fail for the same reasons. Throughout much of his brief he asks us to reweigh evidence, which we cannot do. See *In re B.D.-Y.*, 286 Kan. at 705. Like Mother, Father argues reintegration was frustrated when visits were reduced based on abuse allegations made to DCF. Without further explanation, he asserts the allegations were later determined to be unsubstantiated. As previously discussed, the district court believed the abuse occurred and made explicit adverse credibility findings regarding both Mother's and Father's denials and explanation of the allegations. Father's argument on this point is unpersuasive.

Father further argues the parents were able to maintain appropriate housing, provide proof of rent, and allowed walk-throughs of the home. His argument is contrary to testimony from multiple SFM employees who indicated both Mother and Father were either not home or refused to let them in. His argument goes purely to the weight and credibility of the evidence and would require us to resolve conflicting evidence, which—again—we are not allowed to do. See *In re B.D.-Y.*, 286 Kan. at 705. Thus, it is unpersuasive. In any event, concerns about Mother's and Father's home did not appear to be a substantial reason underlying the district court's decision. The point is tangential at

best. The overarching concerns were both parents' inability to understand and care for the children's individual needs and the parents' frequently hostile behavior toward nearly everyone involved in the case.

Father asserts both parents were able to maintain steady incomes and provide for the children. His argument is contrary to Douglas' testimony that Father was frequently unemployed and could not maintain a steady job, as well as Metcalf's testimony that neither Mother or Father would review a budget with her, would not consistently provide proof of income and payment of rent and utilities, and often became hostile when she asked them about their jobs. Again, this argument fails as a pure question of the weight and credibility of the evidence.

Like Mother, Father also relies substantially on the testimony of Indra and Mullen regarding the parents' participation and progress in therapy. For the reasons previously discussed above, Father's argument is equally as unpersuasive as Mother's. Like Mother, Father also argues there was no need for continued mental health referrals and the SFM staff were not qualified to opine as to his progress or lack thereof. Again, this argument fails for the same reasons as Mother's. But in Father's case, his argument is further undercut by his aggressive behavior toward SFM staff, including explicit threats of violence toward Dawson and Metcalf. Father's argument is not persuasive, and we observe no error in the determination by the district court Father was unfit.

II.    TERMINATION OF BOTH MOTHER'S AND FATHER'S PARENTAL RIGHTS WAS IN THE BEST INTERESTS OF THE CHILDREN.

Mother and Father argue the district court erred in finding termination of their parental rights was in the best interests of both B.H. and E.H.

13

## A.   *Standard of Review*

Upon making a finding of unfitness of the parent, the district court must consider whether "termination of parental rights . . . is in the best interests of the child." K.S.A. 2020 Supp. 38-2269(g)(1). In making this decision, the district court gives primary consideration to the physical, mental, and emotional needs of the child. K.S.A. 2020 Supp. 38-2269(g)(1). The district court makes the best-interests determination based on a preponderance of the evidence, which is essentially entrusted to the district court acting within its sound judicial discretion. See *In re R.S.*, 50 Kan. App. 2d at 1115-16. We review a court's best-interests determination for an abuse of discretion,

> "which occurs when no reasonable person would agree with the district court or the district court premises its decision on a factual or legal error. In determining whether the district court has made a factual error, we review any additional factual findings made in the best-interests determination to see that substantial evidence supports them. [Citation omitted.]" *In re R.S.*, 50 Kan. App. 2d at 1116.

The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

## B.   *Discussion*

Mother and Father offer nearly identical arguments in their briefs. In the interest of brevity, clarity, and consistency, we address their arguments collectively as neither Mother nor Father offers any persuasive reason why their circumstances are different from each other's. Both Mother and Father acknowledge the district court considered E.H.'s unique physical needs and their inability to appreciate and care for his needs, and both assert the district court was incorrect because the record showed they attended E.H.'s medical appointments. Here, Mother's and Father's argument is flawed because they fail

14

to acknowledge the fact they were prohibited from attending E.H.'s medical appointments due to their hostility toward medical staff. Mother and Father both fail to acknowledge testimony from multiple witnesses they improperly fed E.H. causing him digestive problems and also failed to properly support him when he sat on the couch during visits, causing him to fall on multiple occasions. The district court properly determined Mother and Father were unable to appreciate or properly care for E.H.'s unique physical needs.

Both Mother and Father further assert the district court erred in addressing the children had not bonded with either Mother or Father. They claim the district court erred in examining the bonds both Mother and Father had with E.H. because he was just an infant and nonverbal. Their argument is generally premised on a flawed assumption a child needs to communicate verbally to demonstrate a bond with his or her parents. E.H.'s foster parents testified E.H. behaved differently and was often quiet and withdrawn after visits. There is no reason—and Mother and Father offer none—the district court could not draw reasonable inferences as to E.H.'s bonds with his mother and father based on observations of his demeanor following visits. The record also clearly reflects E.H. had been in an out-of-home placement for nearly his entire life. During that time, both Mother and Father had little visitation with E.H. due to conflicts with SFM staff and investigations into abuse allegations. We observe no error in the district court's finding E.H. had not bonded with either his mother or father.

Both Mother and Father assert their bond with B.H. was undermined by B.H.'s foster mother who encouraged B.H. to refer to her as "Mom" and Mother as "Honey." Mother's and Father's argument on this point is limited, speculative, and unpersuasive. There was competent evidence both Mother and Father lacked a sufficient bond with B.H. Testimony from Patterson and Appelhans established B.H. was often upset and behaved differently after visits with Mother and Father. There was also testimony from several caseworkers that both parents were inattentive toward B.H. during visits and could not get her to behave, and B.H. generally did not seem to follow the instructions

15

given by either Mother or Father. Again, we observe no error in the district court's finding the bonds between B.H. and her mother and father were almost nonexistent.

Finally, both Mother and Father unpersuasively argue the district court erred in relying on the observations and opinions of the caseworkers rather than Indra. The district court did not err in its reliance on the testimony of the caseworkers. Nearly everyone who testified indicated both Mother and Father became hostile toward SFM staff. It was this hostility toward the staff and inability to cooperate and follow suggestions that frustrated reintegration efforts and made their visits unproductive. As previously discussed, any progress Mother and Father made working with Indra did nothing to change either's behavior toward the caseworkers or their interactions with the children during visits.

Mother and Father have identified no error of fact or law underlying the district court's decision to terminate their parental rights. Based on Mother's and Father's consistent inability to cooperate with caseworkers and their failure to make appreciable progress toward reintegration, the district court did not err in terminating the parental rights of both Mother and Father. Both Mother and Father showed a longstanding inability to appreciate and care for E.H.'s unique physical needs and B.H.'s unique mental and emotional needs. The district court properly considered the physical, mental, and emotional needs of the children and made its decision to terminate both Mother's and Father's parental rights with the best interests of B.H. and E.H. in mind. See K.S.A. 2020 Supp. 38-2269(g)(1). The district court's decision was not unreasonable. Mother and Father have failed to demonstrate an abuse of discretion by the district court in finding it was in the best interests of both B.H. and E.H. for the parental rights of both Mother and Father to be terminated.

Affirmed.